UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROBERT BRYANT,　　　　　　　　　　　　　　　　　　　　　No. 18-11348-t7

　　　Debtor.

SUSAN PILLARELLA-BRYANT, individually
and as the parent and natural guardian of
Joseph Bryant, Michael Bryant, and Emily Bryant;
JOSEPH BRYANT and MICHAEL BRYANT,
individual adults,

　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 18-1044-t

ROBERT JOSEPH BRYANT,

　　　Defendant.

## **OPINION**

　　　Plaintiffs ask that defendant's judgment debt be declared nondischargeable because it is based on Defendant taking their trust funds while he was the trustee. Defendant counters that he invested the money in real estate just before the 2008 crash and lost it, regrettably but innocently. After a trial on the merits, the Court finds that Defendant flagrantly breached his duties as a trustee, rendering the debt nondischargeable. Plaintiffs also sought denial of Defendant's discharge but did not carry their burden of proof on those claims.

I. FACTS[1]

Homer O. Bryant, Jr. was the father of Defendant and two other sons, Steven and Craig. Craig Bryant married Susan Pillarella; they had three children, Joseph, Michael, and Emily. At the time of his death, Homer Bryant owned houses in Staten Island, New York and Rio Rancho, New Mexico.[2] On May 10, 2006, Homer Bryant created a trust for the benefit of his children and grandchildren. He conveyed the Staten Island house into the trust, but not the Rio Rancho house.

Homer Bryant died in New Mexico on February 2, 2007. Defendant was appointed the executor of his probate estate and the trustee of the trust. Defendant filed a probate proceeding in New York so he could sell the Staten Island house. He did so and kept the net proceeds in trust. The result was $10,606 for each of Joseph, Michael, and Emily Bryant. On September 5, 2007, Defendant as trustee bought three $10,606 certificates of deposit, one for each child.

On October 3, 2007, the New York probate court held a hearing and considered whether the $31,818 of trust funds should be distributed directly to Susan Pillarella-Bryant for the benefit of the three minor children because it was too expensive and cumbersome to keep such a small amount of money in trust. Notice was given to Defendant that the probate court would hold a final hearing on the matter on November 21, 2007.

---

[1] The Court took judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same). The Court also took judicial notice of the state court dockets of the 2009 action Plaintiffs brought against Defendant, D-1329-CV-200901373, and the state court foreclosure action in which the parties were named, D-1329-CV-200801577.

[2] The street address of the Rio Rancho house was 2048 North Ensenada Circle, Rio Rancho, New Mexico. Defendant lived in the house at all relevant times until it was lost to foreclosure.

Upon receiving notice of the hearing, Defendant did something inexcusable. Instead of attending the hearing or taking any other reasonable action, on October 15, 2007, he cashed in the CDs he had just bought and put all the money in his personal bank account.[3]

The probate hearing was held on November 21, 2007. Defendant did not appear. On December 10, 2007, the probate court ordered:

> That portion of the Homer Bryant, Jr. Revocable Living Trust regarding Joseph Bryant, Michael Bryant, and Emily Bryant is terminated as being uneconomical, and the trustee is hereby ordered to deliver to Susan M. Pillarella-Bryant forthwith all sums currently being held by the trustee of said trust for them, for Susan M. Pillarella-Bryant to apply said sums to the use, benefit, education, health and maintenance of Joseph Bryant, Michael Bryant, and Emily Bryant.

Defendant did not comply with this order. Instead, it appears that he spent the trust funds to support himself. On November 21, 2008, the probate court ruled:

> Almost a year later, the Trustee has yet to comply with the direct of this Court to forthwith turn over the funds being held by him in Trust for said infants. Consequently, counsel for the children's mother now moves for an order directing the turnover to her of a sum certain which she may convert to a money judgment. She then intends to enforce the Transcript of Judgment against Robert Joseph Bryant in the State of New Mexico, where he resides.
> . . .
> As a result of the interest accrued, the total amount of Eleven Thousand Five Hundred Eleven and 90/100 ($11,511.90) Dollars is due to each of movant's children as of October 6, 2008. Based upon the foregoing, movant is awarded a money judgment against Robert Joseph Bryant individually, as the Executor of the Estate of Homer Bryant, Jr. and as Trustee of the Trust in the total amount of Thirty Four Thousand Five Hundred Thirty Five and 70/100 ($34,535.70) together with interest from October 6, 2008 at the statutory rate of Nine (9%) percent per annum.

Defendant first testified that he used the money as a down payment on the Ensenada House. That clearly is untrue, as his father bought the house in October 2006. Later, Defendant changed his testimony and said that he used the money to "pay down" the mortgage. The evidence

---

[3] In part, Defendant took the money to spite Ms. Pillarella-Bryant and prevent her from gaining control over the trust. Defendant testified that he "felt harassed" by her.

-3-
Case 18-01044-t    Doc 38    Filed 06/26/19    Entered 06/26/19 15:08:11 Page 3 of 12

contradicts this version of events as well.[4] At best, Defendant may have used some of the money to pay the mortgage on the Rio Rancho house while he lived there, which clearly was improper and self-serving. While Defendant's testimony in certain areas was credible, his testimony about what he did with Plaintiffs' trust funds in 2007 and 2008 was not at all credible.

At some point in 2008 Defendant stopped paying the mortgage on the Rio Rancho house and the bank brought a foreclosure action.[5] A foreclosure judgment was entered February 11, 2009, and the house was sold on April 2, 2009.

Ms. Pillarella-Bryant sued Defendant in New Mexico's Thirteenth Judicial District Court on June 12, 2009, seeking to domesticate and collect the New York judgment. The judgment was duly domesticated and Ms. Pillarella-Bryant attempted to collect it, to no avail. The action was dismissed for lack of prosecution on January 25, 2013. The case was reopened on February 3, 2017 so collection efforts could be renewed. Defendant was found to be in contempt of court for failing to comply with court orders. On December 12, 2017, a bench warrant was issued for Defendant's arrest. He was jailed on or about January 31, 2018, and released February 8, 2018. Plaintiff's collection efforts prompted Defendant to file this bankruptcy case.

Defendant listed his debt to Plaintiff on his bankruptcy schedules at $65,617.83. He listed his sole source of income as social security, although in his statement of financial affairs (SOFA) he disclosed $12,126 in 2018 business income. That business was Magic Sweep, a chimney sweeping business Defendant owned, which he had operated with one of his sons. When Plaintiffs

---

[4] When the bank foreclosed its mortgage, the loan balance was much higher than it would have been had Defendant use the money to pay down the mortgage. The loan balance was consistent with regular mortgage payments but not with a substantial extra payment to reduce the principal balance.
[5] Plaintiffs were named as defendants in the foreclosure action because apparently Ms. Pillarella filed a claim of lien on the house on April 8, 2008.

questioned Defendant at length about why he did not schedule income from the chimney sweep business on schedule I. Defendant testified that he is in poor health, having suffered four heart attacks, and that his son, who ran the business, died in March 2018. Defendant testified that without his son the business likely will generate little to no income in the future.

Defendant also discloses two losses in his SOFAs: a theft loss of guns, gun safe, watches, jewelry, and cold coins, allegedly stolen by the deceased son, and a roof cave-in that was paid for by insurance. Under cross examination, Defendant's testimony about these losses and the insurance payment was contradictory and questionable.

## II. DISCUSSION

A. Nondischargeability.

1. §523(a)(2)(A). Plaintiff seeks a determination of nondischargeability under §523(a)(2)(A), which excepts from discharge any debt for money to the extent obtained by false pretenses, a false representation, or actual fraud. The trial evidence, however, showed that Defendant obtained the funds legitimately, i.e. as the duly appointed trustee of his father's trust. While Defendant's handling of the Plaintiffs' trust funds is inexcusable, it was not fraudulent.[6] Plaintiff's §523(a)(2)(A) claim must be denied.

2. §523(a)(4). Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To prevail on a defalcation claim, a creditor must demonstrate the existence of a fiduciary relationship between the defendant and the creditor, a defalcation committed by the defendant while a fiduciary, and damages. *In re Luna*, 2013 WL 1290438, at *3 (Bankr. D.N.M.). Under Tenth Circuit law, a

---

[6] There is convincing evidence that Defendant lied to Ms. Pillarella after the fact about the trust funds. Lies like that are not fraudulent, however, because by then the damages had already been done.

fiduciary relationship exists only where a debtor has been entrusted with money pursuant to "an express or technical trust." *Sawaged v. Sawaged (In re Sawaged)*, 2011 WL 880464 *3 (10th Cir. BAP), citing *Fowler Bros. and Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976). Here, there is no question that Defendant was the trustee under an express trust, nor that the Plaintiffs were the beneficiaries under the trust.

A defalcation means a fiduciary's failure to produce entrusted funds. *See* 6 Collier on Bankruptcy ¶ 523.10[1][b] (16th ed.). In *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013), the Supreme Court held that defalcation requires a "culpable state of mind" with a "knowledge of, or gross recklessness in respect to the improper nature of the relevant fiduciary behavior." *Id.* at 1757.

The Court finds that Defendant defalcated the trust funds, knowing that his actions were highly improper. Fearing that his trusteeship was coming to an end, Defendant simply cashed in the CDs and took the proceeds. A more flagrant breach of trust is hard to imagine.

Defendant cannot account for any of the defalcated funds. The Court finds that he spent all the money on his personal expenses, including paying the mortgage on the Rio Rancho house so he could continue to live there rent-free. Plaintiffs have been damaged by the entire loss of the trust funds, plus statutory interest. Defendant's debt to Plaintiff is nondischargeable under §523(a)(4).

      5.    §523(a)(6). Plaintiff also asks that the debt be declared nondischargeable as a "willful and malicious injury by the debtor to . . . the property of another entity." § 523(a)(6). The "willful" and "malicious" prongs are analyzed separately, and allegations concerning both are required to state a claim under § 523(a)(6). *In re Moseley*, 2012 WL 5193956, at *7 (Bankr.

D.N.M.). The United States Supreme Court explained the meaning of the "willful and malicious" language contained in § 523(a)(6), as follows:

> [t]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. [ ... ] Moreover, [ ] the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

*Kawaauhau v. Geiger*, 118 S. Ct. 974 (1998).

Generally, §523(a)(6) relates to intentional torts. *See* 6 Collier on Bankruptcy ¶ 523.12[1] (16th ed.). A typical example is damages caused by a battery. It is not clear whether defalcation comes within § 523(a)(6). In *In re Wish*, 472 B.R. 763, 786 (Bankr. N.D. Ill. 2012), for example, the court held:

> Plaintiff has not established willful or malicious injury to Plaintiff's property from the withdrawal of $100,000 because that money was essentially embezzled and stolen, not damaged. It would be a strained use of § 523(a)(6) to apply it to that taking. [A Seventh Circuit opinion noted] that a wrongful act [] done intentionally does not necessarily bring it within the scope of § 523(a)(6). Intentional torts are not all covered by that provision. *Jendusa–Nicolai et al. v. Larsen (In re Larsen)*, 677 F.3d 320 (7th Cir. 2012) ("Debts resulting from fraud, for example, are covered in different sections of the Bankruptcy Code.") By analogy, debts resulting from embezzlement or larceny are covered under a separate provision— § 523(a)(4).

On the other hand, *In re Wolf*, 577 B.R. 327 (Bankr. C.D. Cal. 2017), came to the opposite conclusion:

> Although embezzlement does fit squarely within another subsection of 523, the harm done squarely fits within § 523(a)(6)'s definitions as well.

577 B.R. at 346; *see also In re Gunstream*, 2011 WL 6301183, at *7 (Bankr. D. Id.) (to the same effect). The Supreme Court noted the potential overlap in § 523(a) subsections:

> Just as a fiduciary who engages in a fraudulent conveyance may find his debt exempted from discharge under either § 523(a)(2)(A) or § 523(a)(4) …. The same is true for § 523(a)(6)…. There is, in short, overlap, but that overlap appears inevitable.

*Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1588 (2016). The Court will follow *Husky*, *Wolf*, and *Gunstream* and hold that a debt can come within both §§ 523(a)(4) and (a)(6) if the requirements of both subsections are satisfied. The Court finds and concludes that Defendant's conduct comes within § 523(a)(6): it was willful, it was malicious, and Defendant injured Plaintiffs and/or their property by taking and spending all their money.

B.    <u>Denial of Discharge</u>.

Plaintiffs also ask that Defendant's discharge be denied under § 727(a)(2)-(5).

1.    <u>§727(a)(2)(A)</u>. This subsection requires denial of the discharge if the debtor "with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, … property of the debtor, within one year before the date of the filing of the petition . . . ." There is insufficient evidence Defendant took any such improper actions within a year before filing the case.[7] Plaintiffs' § 727(a)(2)(A) claim fails.

2.    <u>§727(a)(3)</u>. Plaintiffs next cite §727(a)(3), which requires discharge denial if, inter alia, Defendant failed to keep books and records from which his financial condition might be ascertained, unless the failure was justified under all of the circumstances. "The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992). To avoid a § 727(a)(3) problem, debtors must be able to produce records that provide creditors:

> with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.

---

[7] As mentioned, the theft loss disclosed in the SOFAs raises some questions, but there was not enough evidence about the loss to justify discharge denial.

*In re Luna,* 2013 WL 1290438, at *7 (Bankr. D.N.M.), citing *Alten*, 958 F.2d at 1230.

The creditor has the initial burden of proving that the debtor "failed to maintain and preserve adequate records" and "that the failure made it impossible to ascertain [the debtor's] financial condition and material business transactions." *In re Luna*, 2013 WL 1290438, at *8 (citing *In re Brown*, 108 F.3d 1290, 1295 (10th Cir.1997)).

If the creditor establishes its prima facie case, the burden shifts to the debtor to justify his lack of records. *McVay v. Phouminh (In re Phouminh)*, 339 B.R. 231, 241 (Bankr. D. Colo. 2005). Courts often use the following standard for assessing a debtor's justification:

> The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Luna*, 2013 WL 1290438, at *8 (quoting *Alten*, 958 F.2d at 1231).

Courts have taken debtors' oral explanation of their financial condition into account for justification of a lack of records. *See, e.g., In re Ogden*, 251 B.R. 441, at *6 (10th Cir. BAP 1999) (relying on debtor's testimony about unavailable records to reverse entry of summary judgment against debtor on § 727(a)(3) claim); *In re Sauntry*, 390 B.R. 848 (Bankr. E.D. Tex. 2008) (court considered debtors' explanation and concluded that their failure to maintain records was justified).

Here, Plaintiff argues that Defendant did not keep books and records about Magic Sweep. However, Plaintiffs were able to reconstruct a good portion of Magic Sweep's finances with the bank records Defendant produced. Defendant's poor recordkeeping did not make it impossible to ascertain Defendant's financial condition and material business transactions. The bank records allowed Plaintiff to ascertain that Magic Sweep was a small business that generated some, but not a lot, of revenue, and has little or no value. Discharge will not be denied under §727(a)(3).

3.  §727(a)(4)(A) and (B). Plaintiff next relies upon § 727(a)(4)(A) and (B), which require discharge denial if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. Plaintiff contends that denial of discharge is warranted under this section because of inaccuracies in the Defendant's bankruptcy petition, statements and schedules.[8]

"[T]o deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact." *In re Brown*, 108 F.3d 1290, 1294 (10th Cir. 1997) (citing *In re Hadley,* 70 B.R. 51, 54 (Bankr. D. Kan. 1987)). A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence. *In re Butler*, 38 B.R. 884, 889 (Bankr.D.Kan. 1984). "Moreover, … mere inaccuracy is not a proper basis for denial of discharge." *In re Brown*, 108 F.3d at 1294.

Evidence at trial was not sufficient to show Defendant knowingly and fraudulently misrepresented his assets or financial affairs on his schedules or statement of financial affairs. The thrust of the Plaintiff's objection lies with the Defendant's failure to disclose Magic Sweep income on schedule I. The argument must be overruled. While it is true that Defendant omitted Magic Sweep's income from schedule I, he did include it in his SOFAs. Given the sporadic nature of Magic Sweep's business, the death of Defendant's son, and Defendant's poor health, the Court does not find that failing to list Magic Sweep's potential income on schedule I is a knowing and fraudulent omission. Similarly, the questions about the theft loss were raised at trial but not answered by Plaintiffs.

---

[8] Plaintiffs also allege the "failure to file appropriate tax documents and tax evasions." § 727(a)(4)(A) relates only to statements made in connection with the bankruptcy case. Failure to file an income tax return is not grounds for denying a bankruptcy discharge.

4. §727(a)(4)(D). Under § 727(a)(4)(D), discharge will be denied if the debtor knowingly and fraudulently withheld from an officer of the estate any recorded information relating to the debtor's property or financial affairs. There is no evidence in the record that Defendant withheld any documents from the case trustee of other officer of the estate. The claim therefore fails.

5. §727(a)(5). Finally, Plaintiffs cite § 727(a)(5), which provides for a denial of discharge if the debtor has failed to explain satisfactorily any loss of assets. The objecting party has the burden of proving that a loss occurred. *United States v. Dorman (In re Dorman)*, 98 B.R. 560, 571 (Bankr. D. Kan. 1987). If the objecting party carries its burden of proof, it shifts to the debtor to explain the loss in a satisfactory manner. *Id.*

Assets that disappeared long ago usually do not warrant denial of discharge. *See In re Keck*, 363 B.R. 193, 206 (Bankr. D. Kan. 2007) (loss must be at a time not remote in time to the filing of the bankruptcy) (quoting *In re Shepherd*, 2005 WL 4147868 (Bankr. D. Kan. 2005) and *In re Straub*, 192 B.R. 522, 525 (Bankr. D.N.D. 1996)); *see also In re Coppaken*, 572 B.R. 284, 325 (Bankr. D. Kan. 2017) (alleged loss of assets occurring 6-10 years pre-petition was too remote to qualify under § 727(a)(5)); *In re Carlson*, 2008 WL 8677441, at *5 (10th Cir.) (unpublished) (unexplained disappearance of assets shortly before the bankruptcy filing) (quoting *In re Perry*, 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000)); *In re Poole*, 2017 WL 3598050, at *6 (9th Cir. BAP) (disappearance must be not too remote from the bankruptcy petition date). "The exact time a court should look back depends on the case; there is no hard and fast rule." *In re Self*, 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005). *See also In re Robertson*, 576 B.R. 684, 713 (Bankr. N.D. Ga. 2017) (transfers 5-7 years pre-petition were well outside the ordinary time range for § 727(a)(5)

purposes); and *In re Lufkin*, 393 B.R. 585, 595 (Bankr. E.D. Tenn. 2008), aff'd, 2010 WL 1332114 (E.D. Tenn.) (look back to a time not too remote from the petition date).

In this case, Defendant liquidated the CDs on October 15, 2007, nearly 11 years before the bankruptcy filing. The Court finds that the assets (the trust funds) were lost too long before the petition date to warrant denying the discharge under § 727(a)(5). The other loss (theft loss of guns, jewelry, etc.) happened shortly before the case was filed, but there is not enough evidence of wrongdoing to bring that loss into serious question.

III. CONCLUSION

Defendant's debt to Plaintiffs is nondischargeable under §523(a)(4) and (6). Plaintiffs' request for denial of the discharge under §727(a) is denied. The Court will enter a separate judgment.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 26, 2019
Copies to: electronic notice recipients